5:19-cv-0708

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

CLINTON STRANGE,

Plaintiff

RECEIVED

JUN 0 3 2019

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY_____

v.

IBL a/k/a INTERNET BUSINESS LISTINGS;

an unregistered / unlicensed Florida Business Entity

PRESTIGE DATA SOLUTION, LLC;

a Florida Limited Liability Company

&

JEFFREY DIEBNER,

as a principal owner of IBL

Defendants

CIVIL ACTION:

COMPLAINT FOR WILLFUL AND KNOWING VIOLATIONS OF:

THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

**Jury Trial Demand**

## PRELIMINARY STATEMENT:

This is an action brought in good faith by an adult individual against Defendants IBL, PRESTIGE DATA SOLUTION LLC, and Jeffrey Diebner (herein Defendant or Defendants) for willful and knowing violations of parts of the Telephone Consumer Protection Act of 1991 ("TCPA"):

47 U.S. Code § 227(b)(1)(A)(iii)

47 U.S. Code § 227(c)(5)

The Plaintiff brings this private civil action to enforce the provisions of these laws in his own response, as a responsible citizen of both the State of Louisiana and the United States of America, to the overwhelming wide-spread public outrage about the proliferation of intrusive, disturbing, and absolutely annoying, nuisance telemarketing practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). The Plaintiff is seeking a maximum award for damages, and an enjoinder from further violations of the parts herein.

## JURISDICTION AND VENUE:

**Jurisdiction** arises in this court because the action involves a Federal Question pursuant to:

47 U.S. Code § 227(g)(2)

&

28 U.S. Code § 1331

This U.S. District Court also has Supplemental Jurisdiction over Plaintiff's Florida and Louisiana State Law claims pursuant to:

28 U.S. Code § 1367(a)

**Venue** lies proper in this U.S. District Court pursuant to:

47 U.S. Code § 227(g)(4)

&

28 U.S. Code § 1391

**PARTIES:**

**Plaintiff**, CLINTON STRANGE, is an adult individual residing at the address of:

CLINTON STRANGE

7021 WINBURN DRIVE

GREENWOOD, LA 71033

**Defendant** IBL a/k/a INTERNET BUSINESS LISTINGS is an unregistered / unlicensed Florida business entity.

**Defendant** JEFFREY DIEBNER is the Registered Agent for Defendant Prestige Data Solution, LLC and is a principal owner/ operator of Defendant IBL.

**Defendant** PRESTIGE DATA SOLUTION, LLC is a Florida Limited Liability Company who according to the Florida Division of Corporations lists a Registered Agent as:

JEFFREY DIEBNER

408 INLET ROAD

NORTH PALM BEACH, FL 33408

**Factual Allegations:**

## SECTION I:

## THE TCPA

1. The Telephone Consumer Protection Act of 1991 "TCPA" states in part under subsection b:

    (b) Restrictions on use of automated telephone equipment(1) Prohibitions: It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-

    (i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

    (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

2. The Telephone Consumer Protection Act of 1991 states in part under subsection c (5):

(5) Private right of action: A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

## SECTION II:

## VENUE

3. An individual "resides" "in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1). A corporation "resides" "in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, [then the corporation resides] in the district within which it has the most significant contacts." *Id.* § 1391(d) (alteration supplied).

4. Plaintiff has solely resided in the Western District of Louisiana since about 2004.

5. Defendant offers its goods and services (via unsolicited telemarketing) and engages in "contracts, agreements, and/or mises" with unsuspecting and vulnerable small business owners within the State of Louisiana. The Western District of Louisiana comprises two-thirds of the entire state. Any entity conducting a targeted campaign of robocalls in the State of Louisiana could reasonably expect to be subject to the exclusive personal jurisdiction of the Western District of Louisiana [See *Strange v. Carnival Corp.* Case No. 5:18-CV-00295-SMH-MLH; Slip op. at 44 (pp. 7-11) (W.D. La. Mar. 20, 2019)].

## SECTION III:

## PLAINTIFF TOOK STEPS TO MITIGATE HIS DAMAGES

6. The Plaintiff annoyed and aggravated by unwanted robocalls registered his cellular telephone number on the United States Federal Trade Commission's Do-Not-Call Registry

on January 3,2018, and later Registered his cellular telephone number on the State of Louisiana Public Service Commission's Do-Not-Call Registry on August 2, 2018 [See Exhibit A].

7. Plaintiff also recalls speaking with one of the Defendant's agents in December 2018 (though he does not recall the exact date- the Defendant has a record of the request) and asking the Defendant's agent to stop calling him.

## SECTION IV:

## AN ATDS AND/OR A PRERECORDED VOICE WAS USED

8. The phone numbers that the Defendant's agent employed in their campaign of illegal robocalls to the Plaintiff's cellular telephone used a "spoofing" tool and /or other technologically deceptive means to conceal the true geographical location from which the calls were really originating.

9. The Plaintiff knows that the illegal robocalls calls made to the Plaintiff's cellular telephone was "transmitted" using technology capable of generating thousands of similar calls per day. The calls were generated from what is called an Automatic Telephone Dialing System, or "ATDS".

10. The Plaintiff knows that the Defendant utilizes a third-party dialer agent that places the auto-dialed calls on their behalf because he was able to find three job ads for Internet Business Listings d/b/a "IBL" that describe the call center as "Inbound only", "Warm Leads", and "No cold-calling". The listings were posted to:

   a- Indeed [See Exhibit B].

   b- Craigslist (laughably this posting says at the bottom "do NOT contact us with unsolicited services or offers") [See Exhibit C].

  c- Glass Door [See Exhibit D].

11. The reason the Defendant retained an agent to place the robocalls is twofold:

  a- To conceal where the call is being placed from and mask the identity of the Defendant on whose behalf the calls are being placed. Interconnected Voice over internet protocol ("VOIP") dialed "neighbor spoofed" numbers are difficult to trace, and that fits with the pattern of behavior and conduct that the Defendant engages in because they go to great lengths to conceal their identity because they know they are engaging in unlawful conduct by and through their Auto Dialer agent.

  b- Because the burden of wasted time, cost, and energy is passed on to the consumer. A robocall can be placed at a cost of fractions of a penny. For every One Thousand calls placed several dozen consumers may answer the phone, and one of those dozens may engage with the Auto Dialer and subsequently be connected to an agent in the Defendant's "inbound" call center.

12. The calls that Plaintiff answered were also made or initiated using a technology known as "predictive dialers". The Plaintiff knows this because on many occasions the "machine on the other end of the call" after receiving the Plaintiff's keypad response to connect him to an Authorized Google Agent he heard a tone that was akin to a coin hitting the surface of water in a wishing well…like a "booip"…but an electronic sound and three or four seconds later he was connected to Defendant.

## SECTION V:

## THE PLAINTIFF'S DAMAGES AND WHY THE COURT SHOULD STACK AND TREBLE THE AWARD

13. Some U.S. District Courts outside of the Fifth U.S. Circuit order that damages be awarded for TCPA violations to be both stacked and trebled particularly when the conduct is egregious as in this instant case before this U.S. District Court as for example, in *Charvat v. NMP, LLC.*, No. 10-3390 (6th Cir. 2011).

14. Plaintiff has received LOTS of similar unwanted robocalls regarding his non-existent and imaginary "Google Business Listing" from Defendant's agent that were illegally placed to Plaintiff's cellphone are listed as follows:

   a- February 26,2018 at 8:06am CST from 337-509-1196

   b- March 14,2018 at 9:35am CST from 318-217-3291

   c- August 7,2018 at 9:25am CST from 318-217-1001

   d- August 8,2018 at 9:39am CST from 318-666-0660

   e- August 14,2018 at 2:38pm CST from 318-217-1001

   f- December 4,2018 at 4:03pm CST from 225-663-8056

   g- December 6,2018 at 4:25pm CST from 225-663-8054

   h- December 7,2018 at 10:02am CST from 225-663-8056

   i- December 10,2018 at 10:42am CST from 225-663-8054

   j- December 12,2018 at 1:00pm CST from 225-663-8056

   k- December 27,2018 at 9:42am CST from 225-663-8056

   l- December 27,2018 at 2:26pm CST from 225-663-8054

   m- January 3,2019 at 9:43am CST from 225-478-6887

   n- January 3,2019 at 2:17pm CST from 318-423-6943

   o- January 4,2019 at 11:47am CST from 225-478-7405

    p- January 7,2019 at 2:41pm CST from 225-478-6887

    q- January 8,2019 at 3:45pm CST from 225-478-6887

    r- January 15,2019 at 9:05am CST from 318-498-5245

    s- January 16,2019 at 9:10am CST from 225-749-1881

    t- January 17,2019 at 09:35am CST from 225-800-0919

    u- January 17, 2019 at 11:49am CST from 318-217-2450

    v- *June 14,2018 at 1:47pm CST (based on transcript from Exhibit F]

The Plaintiff compiled Screenshots of calls (listed in this paragraph as "a-u") from Plaintiff's cellphone's call history [See Exhibit E].

15. The Plaintiff as a result of and as a direct and proximate cause of all these Google Business Listing Robocalls on January 17,2019 became somewhat angry and frustrated, and felt so violated by these fake and scammy Google Business Listing Robocalls that he decided the best way to end them was to utilize subterfuge to identify the Defendant who was calling in order to bring an action for injunctive and monetary relief from a Court of competent jurisdiction.

16. On January 17,2019 at 1:38pm CST the Plaintiff called back to one of the alleged Defendant's phone numbers 318-498-5245, that had called him recently regarding his non-existent and imaginary "Google Business Listing" for Caddo-Bossier Refrigeration , in order to request an address where to send a legal demand / cease and desist request/ Do Not Call Request, and the agent who Plaintiff was connected to (Andy) who identified the company as "Business Direct", and then later as "IBL". The duration of the call was 12 minutes 33 seconds. The Plaintiff recorded and later transcribed the phone call [See Exhibit F].

17. Following the January 17,2019 telephone conversation with the Defendant it is important to note that Plaintiff has for the time being stopped receiving fake Google business listing robocalls from in-state local "neighbor "spoofed numbers. The Plaintiff fear that the calls could start back again if Defendant hires a new autodialer agent to place its calls.

18. Plaintiff is the sole user of the cellular telephone number 318-423-5057 and is the only person responsible for paying on this Verizon wireless account. The Plaintiff has personally been paying on this account in his name since about July,2016. The Plaintiff alleges that he incurs charges for calls as that issue has been defined by other U.S. District Courts.

19. Defendant never had the Plaintiff's prior express written consent to call the Plaintiff either via Live-Voice calls, or via calls placed via or utilizing an ATDS or pre-recorded voice.

20. The Defendants have no prior Established Business Relationship with the Plaintiff.

21. The calls placed to Plaintiff's cellular telephone were not made for an emergency purpose.

22. Technical and procedural standards specific to automated calls are included in § 227(d) and accompanying regulation 47 C.F.R. § 64.1200(b), which do not provide a private right of action or a statutory-damages provision. They can be however alleged as to the conduct of a Defendant in establishing a pattern of violative behavior worthy of treble damages.

23. Recovery of damages for the two separate provisions does not upset Congress's balance in setting damages "'fair to both the consumer and the telemarketer.'" See *GVN Mich.*, 561 F.3d at 632 n.8 (quoting 137 Cong. Rec. S16,204, S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).

24. The U.S. District Court for The Western District of Louisiana is under the Fifth U.S. Circuit Court of Appeals. The Fifth Circuit and the Sixth Circuit are "sister circuits". In certain cases, the Courts in one District Court will look to other court rulings in how best to

rule on a matter. Such cases come up from time to time a decisions are reached, and courts will cite which circuit courts are their "sister courts". In one case for example the court ruled as thus…"Our sister circuits have differed on this issue. While some have said that the burden of proving withdrawal always rests on the defendant,[citing the Second, Fifth, Sixth, Tenth and Eleventh Circuits],others have held that, once the defendant meets his burden of production that he has withdrawn prior to the relevant limitations period, the burden of persuasion shifts to the government [citing The First,Third,Fourth,Seventh and Ninth Circuits]… Quoting from *United States v. Moore*, 651 F.3d 30,90 (D.C. Cir. 2011)(per curiam)(holding "that the defendant bore the burden of persuasion to show that he withdrew from the conspiracy outside of the statute of limitations period"),aff'd,133 S.Ct. 714 (2013).

25. The calls made to Plaintiff's cellular telephone that concealed the geographic location from which the calls originated violated disparate parts of the Truth In Caller ID Act as amended to the Telephone Consumer Protection Act.

26. The Defendant purposely instructs its inbound call center agents and managers not to reveal who the calling entity is or provide an address to consumers in which to make a written request to stop calling, which interferes with their rights to be removed from the Defendant's internal call list.

27. The Plaintiff was the "called party" in the targeted campaign of illegal robocalls placed to Plaintiff's cellular telephone number by the Defendant.

28. Plaintiff has received and can document way beyond a reasonable doubt that he has received 2 or more phone calls within a 12-month period in violation of subsection (c)(5) of The Telephone Consumer Protection Act of 1991.

29. Plaintiff does not like to receive unwanted commercially solicitous phone calls on his cellphone because they "intrude on his seclusion and violate his rights to privacy guaranteed under the U.S. Constitution", and further deplete plaintiff's memory storage capacity, deplete Plaintiff's battery level on his cellphone (amounting to a conversion Tort under Louisiana State Laws), and require him to use a measurable amount of both mental and physical energy to walk to his phone and answer the calls. Plaintiff alleges that he has Article III standing as a result of Defendant's alleged conduct.

## SECTION VI:
## OTHER PARTIES THAT WERE HARMED BY THE DEFENDANT'S ALLEGED CONDUCT

30. Google LLC has adopted a policy about how to best address the issue of rampant Robocalls that are made using their products as bait for least sophisticated, or vulnerable small business owners. They sue them for Trademark or copyright infringement, and rightly so because their image, brand, and reputation is harmed. Moreover, the Plaintiff believes that these miscreants like the Defendant herein unjustly enrich themselves at the expense of a well-known company by peddling for $399 what Google LLC gives away for free (if one invests a little bit of time to engage the free technology).

31. Google LLC says that these Robocalls are scams, and they will sue those who participate in like that of which the Defendants engage in [See Exhibit G].

32. Plaintiff is not alone in his allegations pertaining to the conduct of the Defendant herein. Others have complained about the behavior and conduct of the Defendant to:

    a- BBB (The Better Business Bureau)
    b- RipoffReport.com

c- State of Florida

[See Exhibit H].

33. Defendant had a Federal Lawsuit (*Abante Rooter and Plumbing, Inc. v. Prestige Data Solution, LLC et al* Case No. 9:17-CV-80458 RLR-DLB (S.D. Fl.) filed against them for similar alleged misconduct on April 11, 2017.

34. Plaintiff knows that the Defendant was trying to trick him out of what little money he has in order to pretend like they were offering him a lot of services from a company they do not even have an affiliation with, and certainly do not represent.

## SECTION VII:

## THE FEDERAL REGULATORS LACK THE ENFORCEMENT MANPOWER TO EFFECTIVELY POLICE THE TCPA

35. The TCPA is regulated by regulatory "watchdogs" such as the U.S. Federal Communications Commission ("FCC"). In an article published to the foxnews.com website (originally published by the Wall Street Journal – by Sarah Krouse on March 28, 2019) "The FCC has fined robocallers $208 Million. It's collected $6,790" [See Exhibit I].

36. While the TCPA is regulated by powerless and toothless regulators it is effectively enforced (as the U.S. Congress and original authors of the bill intended) by individual consumers such as the Plaintiff, and perhaps more often by class action plaintiff's attorneys. The FCC agents are well-meaning and do what they can to enforce the Laws, but they cannot effectively enforce the Law due to a want of manpower.

## SECTION VIII:

## THE ENTITIES AND PRINCIPALS BEHIND THE SCHEME

37. Although the Defendant's employees and floor managers identified the calling entity as either "Business Direct" or "IBL" the true Legal Identity of the calling entity is known to the Plaintiff as the named Defendant Prestige Data Solution, LLC.

38. Plaintiff conducted an internet search for "IBL" call center job postings and located the three previously referenced ads that indicated IBL stood for Internet Business Listings.

39. The Defendant operates a website (www.internetbusinesslistings.net) that references in their "terms and conditions" at Section No.11 (though misspelled) "PRESTGE DATA SOLUTIONS" [See Exhibit J].

40. The Plaintiff took that information and found the Defendant's nearly identical website (www.prestigedatasolution.com) [See Exhibit K].

41. The Plaintiff searched the Florida Division of Corporations website and found the Articles of Organization for the Defendant [ See Exhibit L].

42. The Plaintiff knows that the following persons are financial beneficiaries of the Defendant, and Plaintiff also knows that evidence presented at trial garnered by discovery documents will prove that the following persons control, have comingled funds and assets, and derive profits from the alleged unlawful conduct of the Defendants:

   a- Jeffrey A. Diebner, 718 Magnolia Drive, Lake Park, FL 33403

   b- Michael J. Wadlow, 309 Bradley Avenue, Northvale, NJ 07647

   c- Robert A. Lachaussee, 9 Spring Street, Toms River, NJ 08753

   d- Patrick K. Murphy, 180 Birchwood Road, Old Tappan, NJ 07675

43. The Plaintiff knows that the persons referenced in the above paragraph are connected to the Defendant because they all ran a similar entity called Local Data Solution LLC that was

Administratively Dissolved by the Florida Division of Corporations on September 22, 2017 [See Exhibit M].

## SECTION IX:

## THE DEFENDANTS ARE ALLEGED BY THE PLAINTIFF TO HAVE VIOLATED LAWS OF THE STATES OF FLORIDA AND LOUISIANA

44. Prestige Data Solution, LLC does not possess a Florida Telemarketing License.

45. Defendant does not maintain a $50,000.00 surety bond or Certificate of Deposit as required by Florida Law.

46. Prestige Data Solution, LLC has never registered with the State of Louisiana as required to call consumers within the state.

47. Defendant has not obtained a surety bond of $10,000.00 or filed an Affidavit of self-insurance with the Louisiana Public Service Commission.

48. Defendant has not undertaken steps to obtain a Louisiana Do-Not-Call Register List.

49. Defendant's employees, managers, and or agents do not reveal the identity of the entity calling as required under both Florida and Louisiana Laws.

50. Defendant's calls were deceptive as to their misrepresentation of their supposed relationship with Google LLC. They claimed to be authorized Google My Business representatives which Plaintiff knows to be a trade mark of Google LLC [See Exhibit N].

51. Defendant's agents who utilized interconnected VOIP technology to placed autodialed calls with Pre-Recorded Voice technology also violated Louisiana Law when they Neighborhood Spoofed the caller ID information to conceal and mislead the Plaintiff as to where the call was really originating pursuant to Louisiana RS 51: §1741.5. Remedies for violation:

A. Whoever violates the provisions of this Chapter shall be subject to injunctive relief, treble damages, court costs, and reasonable attorney fees.

B. Any person or entity who is adversely affected by a violation of this Chapter may bring an action against a person who knowingly inserts false information into a caller identification system with the intent to cause harm to, wrongfully obtain anything of value from, mislead, defraud, or deceive the recipient of a telephone call. A person who brings an action under this Chapter may seek to enjoin further violations of R.S. 51:1741.4 and seek to recover as provided for in this Section.

C. The attorney general, or a district attorney in a parish where a violation occurs, may bring an action against a violator for injunctive relief and to recover a civil penalty of up to ten thousand dollars per violation.

## SECTION X:

## THE DEFENDANT AND THEIR PRINCIPALS ARE JUST AS LIABLE AS THE AGENTS WHO PLACED THE ROBOCALLS

52. Under the TCPA, individuals such as the principal controllers and beneficiaries of the Defendant may be held personally liable for TCPA violations under 47 U.S.C. § 227, which provides that "the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as of that person." Id. (emphasis added). See also *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ([M]any courts have held that corporate actors can be individually liable for violating the

TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.); *Maryland v. Universal Elections*, 787 F. Supp.2d 408, 415-16 (D. Md. 2011) (If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."). Also applicable to this argument is also *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 1333472 at *3 (N.D. Ohio Mar. 28, 2014).

53. Defendant was and has been liable to the Plaintiff for damages under the Telephone Consumer Protection Act since they first committed a violation. The Court should calculate and appropriately award Plaintiff both pre and post judgement interest on the judgement awarded by the Court from the date that the Court determines the Defendant was first liable to the Plaintiff for damages.

54. At all times pertinent hereto Defendant was acting by and through their agents, servants and / or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

55. At all times pertinent hereto, the conduct of the Defendant, as well as that of their agents, servants and/ or employees was intentional, reckless, and in grossly negligent disregard for Federal Laws and the rights of the Plaintiff herein.

### SECTION XI:

### THE COUNTS A/K/A CAUSES OF ACTION:

### COUNT I:

**(Plaintiff v. Defendants)**

## WILLFULL AND KNOWING VIOLATIONS OF THE

## TELEPHONE CONSUMER PROTECTION ACT OF 1991

### 47 U.S. Code § 227(b)(1)(A)(iii)

56. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

57. At all times pertinent hereto the Defendant was liable to the Plaintiff for violations of:

> The Telephone Consumer Protection Act 47 U.S.C. § 227(b)(1)(a)
>
> Which makes Defendant liable to Plaintiff for at least 23 violations as evidenced in the complaint and Plaintiff seeks between $500 and $1,500 in damages for said violations at the discretion of the court.

## COUNT II:

### (Plaintiff v. Defendants)

## WILLFULL AND KNOWING VIOLATIONS OF THE

## TELEPHONE CONSUMER PROTECTION ACT OF 1991

### 47 U.S. Code § 227(c)(5)

58. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

59. At all times pertinent hereto the Defendant was liable to the Plaintiff for violations of:

> Telephone Consumer Protection Act 47 U.S.C. § 227(c)(5)

Which makes Defendant liable to Plaintiff for at least 23 violations as evidenced in the complaint and Plaintiff seeks between $500 and $1,500 in damages for said violations at the discretion of the court.

## COUNT III:

(Plaintiff v. Defendants)

### WILLFULL AND KNOWING VIOLATIONS OF

### Louisiana RS 51: §1741 et seq.

### The Louisiana Caller ID Anti- Spoofing Act

60. The Plaintiff seeks damages of up to $10,000.00 for each and every violation of the Louisiana Caller ID Anti-Spoofing Act that the Court determines was committed or as evidenced in the complaint which Plaintiff calculates as 23 separate violations.

**Jury Trial Demand;**

Plaintiff demands trial by jury on all issues so triable.

**Prayer for Relief;**

WHEREFORE, Plaintiff seeks judgement in Plaintiff's favor and damages against the Defendant in the amount of $299,000.00 (Two Hundred Ninety-Nine Thousand Dollars), based on the following requested relief:

Statutory Damages;
Treble Damages;
Stacked Damages;
Pre and Post Judgement Interest;
Enjoinder from further violations of these parts;
Costs of litigating the action and court costs;
And such other and further relief as may be necessary, just and proper.

Respectfully Submitted,

X _[signature]_         5-30-2019
Clinton Strange
Pro Se                  Dated
7021 Winburn Drive
Greenwood, LA 71033
318-423-5057
parsmllc@gmail.com